IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SINGLE SOURCE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 07 C 1201 |
| | ) |
| ARLIS HARVEY and | ) |
| FOOD MARKETING CONCEPTS, INC., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Arlis Harvey's ("Harvey") and Defendant Food Marketing Concepts, Inc.'s ("FMC") motion for summary judgment. For the reasons stated below, we deny the motion for summary judgment.

# BACKGROUND

Plaintiff Single Source, Inc. ("Single Source") alleges that in 1998 it hired Harvey to assist Single Source in the expansion of its business and customer base in Texas and other areas. In 2000, Harvey was allegedly promoted to a Sales Director position and Harvey executed a confidentiality agreement ("Agreement"). Single Source contends that Harvey promised in the Agreement to keep confidential all of Single Source's trade secrets and to use them solely for the benefit of Single Source.

1

Harvey allegedly became disgruntled in 2005, because another salesman was making more money than Harvey. Beginning in late 2005, Harvey, while continuing to work for Single Source, allegedly assisted in the formation and outfitting of FMC. While assisting in the formation of FMC, Harvey also allegedly referred customers of Single Source to FMC, solicited sales for FMC from Single Source's customers, and used his Single Source expense account to pursue customers for FMC. Harvey also allegedly used trade secret information obtained from Single Source when assisting in the formation of FMC. In addition, Harvey allegedly disparaged Single Source when speaking to customers of Single Source, causing the customers to give their business to FMC. Single Source brought the instant action and includes in its second amended complaint a breach of fiduciary duty claim brought against Harvey (Count I), and tortious interference with prospective economic advantage ("TIPEA") claims brought against Harvey and FMC (Count II). Defendants move for summary judgment on all claims.

**SUMMARY JUDGMENT**

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate

the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

I. Statement of Additional Facts

Single Source filed a response to Defendants' statement of material facts and

Single Source included a statement of additional facts in accordance with Local Rule 56.1. Although Defendants subsequently filed a reply brief in support of their motion for summary judgment, Defendants never filed a response to Single Source's statement of additional facts. In the absence of a response by Defendants properly disputing the facts in Single Source's statement of additional facts, all such facts are deemed to be admitted for the purposes of the summary judgment motion. LR 56.1. Such facts are deemed undisputed due to the lack of a denial by Defendants and the failure by Defendants to point to evidence in support of a denial. *Dent v. Bestfoods*, 2003 WL 22025008, at *1 n.1 (N.D. Ill. 2003). Further, the Seventh Circuit has held "that a district court is entitled to expect strict compliance with Rule 56.1." *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004)(stating in addition that "[s]ubstantial compliance is not strict compliance"). In fact, the Seventh Circuit, when addressing Local Rule 56.1, recently reaffirmed "'the importance of local rules'" and has noted that it has "'consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules.'" *Chelios v. Heavener*, 2008 WL 746842, at *5-*6 (7th Cir. 2008)(quoting *Koszola v. Bd. of Educ.*, 385 F.3d 1104, 1109 (7th Cir. 2004). Therefore, all of the facts contained in Single Source's statement of additional facts are deemed to be undisputed.

II. Breach of Fiduciary Duty Claim

Defendants argue that they are entitled to summary judgment on the breach of

fiduciary duty claim contending that Harvey did not owe a duty of loyalty to Single Source. Defendants also argue that there is insufficient evidence to show that Harvey breached a duty of loyalty.

    A. Duty of Loyalty

Defendants contend that Harvey did not owe a duty of loyalty to Single Source. Under Illinois law, officers of a corporation "owe a fiduciary duty of loyalty to their corporate employer not to actively exploit their positions within the corporation for their own personal benefit or hinder the ability of a corporation to continue the business for which it was developed." *Everen Securities, Inc. v. A.G. Edwards and Sons, Inc.*, 719 N.E.2d 312, 318 (Ill. App. Ct. 1999). Harvey argues that he was not a director or officer of Single Source and that, as a mere employee of Single Source, he did not owe a duty of loyalty to Single Source. However, aside from the duty of loyalty owed by corporate officers, former employees owe a duty of loyalty to their employers not to "compete with their former employer and solicit former customers . . . before the termination of their employment." *Cooper Linse Hallman Capital Management, Inc. v. Hallman*, 856 N.E.2d 585, 589 (Ill. App. Ct. 2006)(noting that "while still working for an employer, employees may plan, form and outfit a competing corporation so long as they do not commence competition"). Single Source in fact contends that Harvey actively attempted to divert business from Single Source to FMC while Harvey was working for Single Source. Thus, Harvey did owe a duty of loyalty to Single Source as an employee of Single Source.

5

### B. Breach of Duty of Loyalty

Defendants argue that there is not sufficient evidence to show that Harvey breached his duty of loyalty. Harvey asserts that he did not help FMC to compete with Single Source while Harvey worked for Single Source and that he did not play a role in the ultimate decision of some of Single Source's customers to give their business to FMC.

#### 1. Support from Representatives of Single Source's Former Customers

Defendants point to evidence provided by some of Single Source's customers who left Single Source and gave their business to FMC. It is undisputed that Harvey, while working for Single Source, brought Mid-America Services ("Mid-America") and Mid-States Services ("Mid-States") to Single Source as customers. (SF Par. 17-18). It is also undisputed that in July 2006, Harvey resigned from Single Source. (SF Par. 24). According to Defendants, when Harvey resigned from Single Source, Eldon Sims ("Sims"), the Food Sales Director of Mid-States, was unaware of Harvey's departure and Sims sought out Harvey at FMC to continue to do business with Harvey. (SF Par. 22, 31-33). Defendants' version of these events are based upon Sims' deposition testimony that indicates that Harvey was not disloyal to Single Source and that it was Sims who sought out Harvey to give Mid-States' business to FMC. (SF Par. 23, 31-33).

Defendants also contend that in late 2005 and early 2006, Bob Austin ("Austin"), President and CEO of Mid-America, "began to see a decline in the

quality of Single Source's services." (SF Par. 35). Although Single Source disputes that its services actually declined, Defendants contend that Austin learned of various deficiencies in the services provided by Single Source. (SF Par. 36). This version of facts is based upon Austin's deposition testimony indicating that Harvey was not responsible for Mid-America's decision to terminate its business relationship with Single Source. (SF Par. 35-40). Defendants point out that, according to Austin, in the month before Harvey left Single Source, Harvey actually urged Austin to keep Mid-America's business with Single Source "in spite of Austin's discontent with Single Source." (SF Par. 37). Austin also indicates that he "decided to terminate his relationship with Single Source before he learned that . . . Harvey was leaving Single Source and joining competitor FMC." (SF Par. 38). According to Austin, after Mid-America decided to terminate its business relationship with Single Source, Mid-America considered various other suppliers and ultimately chose FMC. (SF Par. 40). Defendants thus point to certain testimony of the representatives of Mid-States and Mid-America that supports their position that Harvey did not breach his duty of loyalty.

2. Circumstantial Evidence Supporting Single Source's Allegations

Single Source argues that Harvey breached his duty of loyalty to Single Source while Harvey was employed with Single Source. Defendants, on the other hand, state that "there is *no* evidence that . . . Harvey solicited Singe Source's customers on behalf of FMC. . . prior to leaving Single Source." (D SJ Mem.

7

14)(emphasis added).  As explained below, we find that Single Source has pointed to sufficient circumstantial evidence to support their claims.

### a.  Representatives of Mid-America and Mid-States

Single Source argues that the mere fact that its former customers support Harvey is not sufficient to warrant the entry of summary judgment in favor of Harvey.  We agree.  Both Mid-America and Mid-States terminated their business relationships with Single Source and formed a relationship with Harvey at FMC.  Single Source is entitled to have a trier of fact assess the credibility of testimony of Austin and Sims, and it would be up to the trier fact to determine whether Austin and Sims are merely attempting to support a current business associate.  *See Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007)(stating that "'[o]n summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder'")(quoting in part *Payne v. Pauley*, 337 F.3d 767, 776 (7th Cir. 2003)).  Thus, the fact that testimony of certain representatives of Single Source's prior customers indicates that Harvey did not cause them to terminate their business relationships with Single Source, is not sufficient evidence to find for Defendants as a matter of law on the breach of fiduciary duty claim.

### b.  Parties Involved in Formation and Funding of FMC

Single Source has pointed to evidence indicating that Harvey took part in the

formation and funding of FMC during its development before Harvey resigned from Single Source, and that Harvey had close connections with the individuals working at FMC. It is undisputed that the formation of FMC was undertaken by Harvey's boyhood friend, Joseph Harris ("Harris"), who was recovering from a recent business failure. (SAF Par. 14-15). It is also undisputed that Harris lacked any experience or business contacts in the correctional food service industry. (SAF Par. 15). It is also undisputed that in 2005 and 2006, Harvey loaned approximately $25,000 to FMC and in 2006, Harvey was issued stock in FMC. (SAF Par. 18-19). Single Source also points to evidence that indicates that while Harvey was working for Single Source, he possessed voting shares of stock and was included in FMC's business plan prepared in March 2006. (SAF Par. 19); (Ans. SJ. 8-9). Not only did Harvey have his friend organizing FMC, it is undisputed that Harvey's brother, Orvin Harvey ("Orvin") began working for FMC, while Harvey was still employed by Single Source. (SAF Par. 31). The fact that Harvey had close relationships with the individuals working for FMC, one of whom had no contacts in the industry, is evidence that could be considered by the trier of fact in assessing Single Source's contention that Harvey was unscrupulously diverting business to FMC while working for Single Source.

 c. Transfer of Business to FMC

As indicated above, it is also undisputed that Harvey acted as Single Source's representative in dealings with Mid-States and Mid-America and, after Harvey left

9

Single Source, both businesses terminated their relationships with Single Source and ultimately gave their business to FMC. (SF Par. 17); (SAF Par. 9-10, 39). Although both companies contend essentially that they just happened to decide to turn to FMC for their business needs and that the companies sought out Harvey, the circumstances are such that a trier of fact could conclude that Harvey made secretive overtures to the companies while Harvey was still working for Single Source and that such overtures are the real reason why the companies turned to FMC. It is undisputed that while Harvey worked for Single Source, he was the representative of Single Source who had regular contact with those companies. (SF Par. 17).

Single Source also contends that another of its customers gave its business to FMC. It is also undisputed that in June 2006, before Harvey's resignation at Single Source, Harvey's brother Orvin made sales on behalf of FMC to Geo Group, which had previously been a customer of Single Source. (SAF Par. 31). The evidence that shows that various customers of Single Source transferred their business to FMC after Harvey resigned, is evidence that the trier of fact could consider in assessing whether Harvey engaged in conduct to cause the transfer while still working for Single Source.

### d. Efforts by Harvey to Discredit Single Source

There are also undisputed facts that show that Harvey made it appear to Austin that Single Source was unable to provide a high level of service to Mid-America. Single Source contends that even if Austin earnestly believed that Single Source was

10

not providing good service to Mid-America, any perceived deficiencies were the direct result of misrepresentations by Harvey. It is undisputed that in the fall of 2005, Austin asked Harvey to find a new supplier of snack chips. (SAF Par. 22). Harvey stated at his deposition that he asked Ken Dziedzic ("Dziedzic"), who managed Single Source's Purchasing Department, to help Harvey find a new supplier and Dziedzic said he was "too busy." (SAF Par. 23). Dziedzic denies that Harvey ever asked him to help find a new supplier. (SAF Par. 26). Whether Dziedzic made such a statement is a dispute of material fact that must be addressed by the trier of fact. *See Washington*, 481 F.3d at 550 (stating that "'[w]here the parties present two vastly different stories . . . it is almost certain that there are genuine issues of material fact in dispute'")(quoting in part *Payne*, 337 F.3d at 776). Harvey also claims he could not find a new supplier on his own. (SAF Par. 24). Harvey then told Austin that Single Source was unwilling or unable to find a new supplier for Mid-America, thus conveying to Austin that Single Source was not responding to Mid-America's needs. (SAF Par. 25). Harvey, while still employed by Single Source, then referred Austin to FMC and Austin contacted FMC to discuss the supplier issue. (SAF Par. 25, 27-28); (R SF Par. 38). Single Source disputes that Harvey was actually unable to find a supplier considering the fact that he had located the previous two suppliers. (SAF Par. 24). In addition, Single Source points to evidence that shows that a partial owner of FMC was easily able to find a new supplier using Google in his spare time. (SAF Par. 29).

Austin also testified that he lost confidence in Single Source due to other

problems, such as problems with delivery trucks. (SAF Par. 32). However, it is undisputed that all of the problems in service were somehow tied to Harvey. (SAF Par. 32). Single Source points to evidence that shows that Harvey lied to Austin on one occasion, telling Austin that Single Source had refused to make any more deliveries to Mid-America's Beeman facility. (SAF Par. 34-38); *See Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007)(stating that "it is not [the court's] place to decide who is telling the truth"). Single Source also contends that Harvey falsely reported to Austin that the deliveries were not being made because the manager of the Beeman facility was "bugging" Single Source's Customer Service Representative, Tiffany Lutz. (SAF Par. 36-38). Whether Harvey lied to Austin is another genuinely disputed fact. Single Source also argues that in addition to the fact that Harvey was making Single Source look bad in the eyes of Mid-America, Harvey never informed Phil Finn ("Finn"), Single Sources' President and owner of the concerns or complaints by Mid-America. (SAF Par. 33). Finn contends that, had he known about Mid-America's concerns, he would have personally intervened to address any concerns of Mid-America before it terminated its relationship with Single Source. (SAF Par. 33).

In sum, the testimony by the representatives of Mid-States and Mid-America is not sufficient to support entering summary judgment in favor of Harvey. Harvey worked closely with Mid-States and Mid-America while working for Single Source and after he left for FMC, the competing company, FMC ended up with the business of Mid-States and Mid-America. Harvey also had an incentive to provide benefits to

brother at FMC and to his close childhood friend at FMC who lacked contacts in the industry. There is also evidence presented by Single Source that Harvey attempted to sabotage Single Source's services, falsely portrayed Single Source as non-responsive to the Mid-America's needs, and that Harvey in fact referred business to FMC while working for Single Source. Harvey also failed to inform Single Source's President and owner of the concerns of Mid-America, which supports Single Source's theory that Harvey did not want Single Source to fix the problems and wanted Mid-America to give its business to FMC.

Single Source also contends that its services did not decline during the relevant period and that Mid-America or Mid-States could not have had a legitimate basis to terminate their relationship with Single Source. For example, Single Source points to testimony by Sims indicating that "the occasional late truck or product shortage was 'not outside normal operation[s]' and that such problems were always promptly resolved by Single Source." (R SF Par. 36). There are thus genuinely disputed material facts relating to whether Harvey breached his duty of loyalty to Single Source that must be resolved by the trier of fact. Therefore, we deny the motion for summary judgment on the breach of fiduciary duty claim (Count I).

III. Tortious Interference with Prospective Economic Advantage Claim (Count II)

Defendants move for summary judgment on the TIPEA claim (Count II). For a tortious interference with prospective economic advantage claim brought under Illinois law, a plaintiff must show: "'(1) a reasonable expectancy of entering into a

valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference.'" *Adelman-Reyes v. Saint Xavier University*, 500 F.3d 662, 667 (7th Cir. 2007)(quoting *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1299 (1996)). Defendants argue that Harvey did not engage in any intentional and unjustified interference with Single Source's business expectancies. Defendants also argue that there is not sufficient evidence that shows that any conduct of Harvey caused Single Source to lose any business expectancy.

### A. Intentional and Unjustified Interference

Defendants argue that there is not sufficient evidence that shows that Harvey engaged in intentional wrongful conduct that would support a TIPEA claim. For TIPEA claims, "'Illinois courts have consistently held that the plaintiff must allege and prove facts which demonstrate that the defendants acted with the purpose of injuring the plaintiff's expectancies.'" *F:A J Kikson v. Underwriters Laboratories, Inc.*, 492 F.3d 794, 800 (7th Cir. 2007)(quoting *Panter v. Marshall Field & Co.*, 646 F.2d 271, 298 (7th Cir. 1981)). Defendants contend that there is no evidence that shows that Harvey engaged in misconduct that could support a TIPEA claim. However, as explained in detail above, there are genuinely disputed facts relating to whether Harvey attempted to lure companies such as Mid-America and Mid-States away from Single Source while Harvey was working for Single Source. Such

14

conduct, if it in fact occurred, could support a TIPEA claim.

B. Causation

Defendants argue that there is insufficient evidence to show that any conduct by Harvey caused Single Source to lose business. Defendants' position, however, is based on their contention that Harvey never engaged in any disloyal conduct while working for Single Source. As indicated above, there are genuinely disputed facts concerning that issue. If the trier of fact concludes that Harvey actively solicited business for FMC from Single Source's customers while Harvey worked for Single Source, the trier of fact could also reasonably conclude that Harvey's conduct caused Single Source to lose business. Therefore, based on the above, we deny Defendants' motion for summary judgment on the TIPEA claims (Count II).

## CONCLUSION

Based on the foregoing analysis, we deny Defendants' motion for summary judgment.

                                                                                                  Samuel Der-Yeghiayan
                                                                                                  United States District Court Judge

Dated: April 7, 2008